**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WESCO INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  15 C 7190 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| BARI WOOD; LAW OFFICES OF BARI WOOD, P.C.; JOHN E. GIERUM, solely in his capacity as Trustee for the bankruptcy estate of Jonathan F. Glick; and AMERICAN ZURICH INSURANCE COMPANY, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

_____

| | |
|---|---|
| AMERICAN ZURICH INSURANCE COMPANY, | ) |
| | ) |
| Cross-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BARI WOOD; LAW OFFICES OF BARI WOOD, P.C.; and JOHN E. GIERUM, solely in his capacity as Trustee for the bankruptcy estate of Jonathan F. Glick, | ) ) ) ) |
| | ) |
| Cross-Defendants. | ) |

_____

| | |
|---|---|
| BARI WOOD, | ) |
| | ) |
| Counterplaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WESCO INSURANCE COMPANY and AMERICAN ZURICH INSURANCE COMPANY, | ) ) |
| | ) |
| Counterdefendants. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This is an insurance-coverage dispute in which the parties seek declaratory relief regarding the obligations of Wesco Insurance Company ("Wesco") and American Zurich Insurance Company ("Zurich") under lawyers professional liability policies issued to the Law Offices of Bari Wood and/or the Law Offices of Bari Wood, P.C. ("Wood, P.C."). The primary issues are whether a potential claim was sufficiently reported to Zurich during the policy period and the applicability of certain exclusions in the policies. Wesco, Zurich, and Wood all move for summary judgment under Federal Rule of Civil Procedure 56. Zurich also moves to strike the report and bar the testimony of Wesco's expert witness, Charles D. Henderson. For the reasons explained below, Zurich's motion for summary judgment is granted; Zurich's motion to strike Henderson's report and bar his testimony is denied as moot; Wesco's motion for summary judgment is granted in part and denied in part; and Wood's motion for summary judgment is denied.

## MATERIAL FACTS AND PROCEDURAL BACKGROUND

The facts are generally undisputed. Zurich issued a Lawyers Professional Liability Insurance Policy (the "Zurich Policy") to the Law Offices of Bari Wood on a "claims made and reported" basis, for the policy period of May 6, 2013 to May 6, 2014 (the "Zurich Policy Period"). Subject to limitations and exclusions, the policy contains a duty to defend claims based on an act or omission in Wood's rendering or failing to render legal services for others. (Dkt. No. 93-1, Zurich Policy at 1.) Specific provisions of the Zurich Policy are set out below in the Court's discussion of the parties' summary judgment motions.

On May 18, 2013, Jonathan F. Glick, who is not a party to this case, filed a Chapter 7 bankruptcy petition, which was assigned Case Number 13 B 20989 (the "Glick Bankruptcy"). On March 5, 2014, during the Zurich Policy Period, four of Glick's creditors (the "Moving

Creditors") filed a "Joint Motion for Authority to Issue Rule 2004 Subpoenas on Individuals and/or Entities Owned, Controlled, Affiliated or Related to the Debtor, Jonathan Glick" (the "Motion for Leave"). Those individuals included Bari Wood. In the motion, the Moving Creditors noted that Glick had stated in his bankruptcy schedules that he had been an officer of thirty-seven business entities within the preceding six years, and that Glick had testified at the meeting of creditors that many of those entities were insolvent. (Dkt. No. 93-3, Mot. for Leave at 2.) The Moving Creditors further stated that they had learned that certain corporations Glick operated and held in a Glick-controlled trust were in fact not insolvent, so they sought leave to serve subpoenas in order to obtain information about contributions made to Glick-controlled trusts, the timing of those contributions, and payments made by and among various of Glick's business entities. (*Id.* at 3-8.) That information, they said, would enable them to determine Glick's "true financial condition." (*Id.* at 8.) The Moving Creditors sought documents from Bari Wood as well as her deposition. (*Id.* at 9.) They stated that she was "the in-house general counsel for most of the Glick companies" and sought information from her "with respect to testimony related to Play Makers Group, LLC and the invoicing and correspondence handled by Bari Wood," in order "to understand the various payments made by [Glick] on behalf of Play Makers Group, LLC among other things." (*Id.* at 4, 6.)

On March 7, 2014, Wood reported the Motion for Leave to her insurance broker, M.G. Welbel and Associates, Inc. ("Welbel"), which on the same date faxed and emailed to Zurich a copy of the Motion for Leave; requested "pre claims assistance" on Wood's behalf; and requested that Zurich contact Wood by phone or at her email address, "bari@bwoodlaw.com." (Dkt. Nos. 27-1; 93-3.) In a letter dated March 10, 2014 from Zurich Team Manager Laurence Grob (the "Grob Letter"), Zurich acknowledged receipt of the information; identified the matter

with a claim number and the assigned claim handler, Louis Peraggine; stated that Peraggine would contact Wood; and further stated that "[f]or effective notice," her policy required that the following information be sent to Zurich: "[t]he description of the alleged act or omission"; "[t]he identities of the claimants or potential claimants"; "[t]he identities of the responsible insured(s)"; and "[t]he date and circumstances by which the insured(s) first became aware of the alleged act or omission." (Dkt. No. 101-5.) The Grob Letter bears the email address "bari@woodlaw.com," not Wood's correct email address. Wood says that she did not receive the Grob Letter via email or U.S. Mail; rather, she received it months later, in June 2014, when Welbel emailed her a copy. (Dkt. No. 101-4, Dep. of Bari Wood at 69-71.)

On March 10, 2014, Peraggine telephoned Wood to discuss the Motion for Leave. Peraggine recalled that he and Wood discussed, among other things, the motion and subpoena, the background of the Glick entities and the bankruptcy, and what type of work Wood performed for the Glick entities. (Dkt. No. 101-12, Dep of Louis A. Peraggine at 42-43.) Peraggine also said that Wood answered all of his questions. (*Id.* at 52-53.) Wood says that Peraggine did not tell her that she needed to take any further action by way of notice to Zurich. (Wood Dep. at 50.)

On March 25, 2014, Wood completed and signed a Zurich form titled "Notice of Circumstance/Claim Reporting Form—Lawyers Professional Liability Insurance Policy" ("Notice of Circumstance Form"), which instructed that it be completed for "each claim or circumstance that could result in a claim." (Dkt. No. 27-2.) Wood identified her law office as the applicant; stated that March 7, 2014 was the date she "first had reason to believe that a claim might be made or an incident (circumstance) report made"; and, in response to the question that sought the names of the claimants or potential claimants, stated: "None at this time. Please see Number 8." (*Id.*) In response to Question 8, which asked for a "[d]escription of [the] alleged act

4

or omission," Wood stated: "On 3/7/14 Bari Wood received a Motion for Leave to Issue 2004 [sic] Subpoenas in Case No. 13-20989, which is a bankruptcy matter. A copy of said motion was delivered to Zurich on 3/7/14." (*Id.*) She further stated that "business transaction/advice" was the area of practice from which the circumstance that could result in a claim arose. (*Id.*)

On March 26, 2014, Wood signed a Zurich form titled "Lawyers Professional Liability Insurance Application" (the "2014 Application"), which had been completed by Welbel, to seek renewal of her insurance policy. Wood checked the "Yes" box in response to Question 37, which asked: "Is any Attorney in Question 2 [Wood] . . . aware of any circumstance, incident, act, error or omission that could result in a claim or suit against the applicant or any predecessor or any of the former or current Attorneys or employees of the Applicant?" (Dkt. No. 27-3 at 4.) Wood attached an additional sheet to the 2014 Application further explaining her answer to Question 37 as follows: "Applicant has provided Zurich with a Motion for Authority to Issue Rule 2004 Subpoena in relation to Case Number 13-20989." (*Id.* at 5.) On March 27, 2014, Welbel submitted the Notice of Circumstance Form and 2014 Application to Zurich.

In the Glick Bankruptcy, the court granted the Motion for Leave, and on April 8, 2014, a subpoena for document production and deposition was issued to Wood. She forwarded a copy of the subpoena to Zurich on June 17, 2014. In a July 23, 2014 letter to Wood (the "Reservation of Rights Letter"), Peraggine acknowledged Zurich's receipt of the subpoena; notified Wood that Zurich had retained "pre-suit counsel for the limited purpose of assisting [Wood] with responding to the subpoena" in the Glick Bankruptcy; reserved the right to deny coverage based on a number of specifically-identified policy provisions and exclusions; and generally reserved all rights and defenses available under the Zurich Policy. (Dkt. No. 23-6.) Subsequently, attorney Thomas Pontikis assisted Wood with producing documents in response to the subpoena

and testifying at her deposition. Pontikis also regularly reported to Peraggine on the events of the bankruptcy proceeding.

Zurich did not renew the Zurich Policy, which expired on May 6, 2014. Wood obtained insurance from Wesco, which issued to the Law Offices of Bari Wood, in reliance on the representations Wood made in the 2014 Application,[1] a Lawyers Professional Liability Policy (the "First Wesco Policy") on a "claims made and reported" basis, for the policy period of May 6, 2014 to May 6, 2015 (the "First Wesco Policy Period"). Wesco later issued, to the Law Offices of Bari D. Wood, P.C., a Lawyers Professional Liability Policy (the "Second Wesco Policy") on a "claims made and reported' basis, for the policy period of May 6, 2015 to May 6, 2016 (the "Second Wesco Policy Period"). Subject to limitations and exclusions, the policies contain a duty to defend Wood on claims for damages that arose out of an act or omission in rendering or failing to render legal services. (Dkt. No. 101-1, First Wesco Policy at 1-2; Dkt. No. 101-2, Second Wesco Policy at 1-2.) Specific provisions of the Wesco Policies are set out below.

On May 15, 2015, John E. Gierum, the Trustee in the Glick Bankruptcy, filed an Adversary Complaint, Number 15-00324, against Wood and others (the "Adversary Proceeding"). On August 19, 2015, the Trustee filed an Amended Adversary Complaint against Wood and others. The gist of the Trustee's allegations is that Glick, with the assistance of his family, business associates, and lawyers, created "fictitious" trusts and a complicated web of sham companies, in an effort to fraudulently transfer assets and shield those assets from

---

[1]Wesco explains in its amended complaint that although this application was completed on a Zurich application form, it was submitted to (and evidently accepted by) Wesco. (Dkt. No. 19, Am. Compl. ¶ 177.)

creditors. The Amended Adversary Complaint contains three claims against Bari Wood. The Trustee alleges that Wood aided and abetted Glick's fraudulent scheme with respect to Play Makers Group, LLC and one of Glick's trusts (Counts XV and XVI) and seeks turnover of allegedly unauthorized post-petition payments she received from certain trust entities (Count XVII). (Dkt. No. 93-9, Am. Adversary Compl.) The Trustee further alleges that Wood, "both as legal counsel and Chief Operating Officer of Glick Group, played a vital role in the formation of [Glick's trusts], the transfer of [a] license and the ongoing scheme to defraud creditors." (*Id.* ¶ 589.)

On May 20, 2015, Welbel sent Zurich a copy of the Adversary Complaint, stating that the matter "relates back to the pre-claim notice provided on March 7, 2014." (Dkt. No. 27-4.) Welbel gave Wesco notice of the Adversary Complaint on the same date. Zurich has declined to provide Wood a defense and has not paid any defense costs incurred by Wood in the Adversary Proceeding. Wesco agreed to provide to Wood with a defense in the Adversary Proceeding subject to a reservation of rights.

On August 17, 2015, Wesco filed the instant action against Wood; Wood, P.C.; Zurich; and Gierum, in his capacity as Trustee,[2] in which Wesco seeks declaratory judgments that it owes Wood, P.C. no duty to defend or indemnify (Count I); it owes Wood no such duties (Counts II and III); Zurich owes Wood a duty to defend her in the Adversary Proceeding (Count IV); and the Wesco Policies are excess insurance vis-à-vis the Zurich Policy (Count V).

---

[2]Wesco does not seek any relief with respect to Gierum other than a declaration that Wesco has no duty to pay the Trustee or anyone else any amount of any judgment entered against Wood in, or for settlement of, the Adversary Proceeding. (Am. Compl., Prayer for Relief C.) Zurich states that it names Gierum in the crossclaim solely "by virtue of his status as a necessary party claimant." (Dkt. No. 23, Crosscl. ¶ 5.)

On October 2, 2015, Zurich sent Wood a letter stating that Zurich was declining to participate in her defense of the Adversary Proceeding; it understood that Wesco was paying for her defense; and it intended to resolve coverage issues in the action Wesco filed. (Dkt. No. 27-7.) The letter cited specific policy provisions upon which Zurich based its denial. Six days later, Zurich sent Wood a revised letter that cited an additional policy exclusion. (Dkt. No. 27-8.)

On December 22, 2015, Zurich filed a crossclaim against Wood and Gierum, in his capacity as Trustee, in which Zurich seeks declaratory judgments that it owes Wood no duty to defend or indemnify because no claim or potential claim was made and reported during the Zurich Policy Period (Count I); Exclusion D of the Zurich Policy relieves Zurich of such duties (Count II); and the policy's Full Firm Prior Acts Endorsement relieves Zurich of such duties (Count III). (Dkt. No. 23, Crosscl.)[3] Zurich's claims are not properly separate "counts" in the traditional sense of being discrete claims. Rather, they are three potential bases for a declaration that Zurich owed Wood no duty to defend or indemnify, so the Court has considered them to be three parts of a single claim and will not enter separate judgments on each count.

On January 26, 2016, Bari Wood filed a counterclaim against Zurich and Wesco, in which she seeks declaratory judgments that Zurich owes her duties to defend and indemnify her in the Adversary Proceeding (Counts I and II), and, in the alternative, that Wesco owes her such duties under the Second Wesco Policy (Counts III and IV). Wood also alleges that Zurich's

---

[3]Although Zurich includes Wood, P.C. as a cross-defendant in the caption of its crossclaim, it does not identify it as a cross-defendant in the body of the crossclaim, nor does it seek any relief specific to Wood, P.C. other than the declaratory judgments sought against Wood herself.

refusal to defend her is "vexatious and unreasonable," and she seeks "statutory penalties." (Dkt. No. 27, Countercl. ¶¶ 82, 83(b).)[4]

Zurich moves for summary judgment on its crossclaim, on Counts IV and V of Wesco's amended complaint, and on Counts I and II of Wood's counterclaim. Zurich also moves to strike the report of Wesco's expert witness and to bar his testimony. Wesco moves for summary judgment on all counts of its amended complaint and on Counts III and IV of Wood's counterclaim. Wood and Wood, P.C. move for summary judgment on Counts I and II of Wood's counterclaim and on Zurich's crossclaim.

The parties recently jointly supplemented the record to provide notice to the Court of the bankruptcy court's dismissal with prejudice of all claims against Wood in the Adversary Proceeding. (Dkt. No. 127, Joint Mot. to Suppl.)

## DISCUSSION

### A.      Motions for Summary Judgment

#### 1.      Legal Standards

It appears that the insurance policies at issue do not contain choice-of-law provisions. The parties do not address the threshold issues of choice of law and applicable substantive law, but they all rely on Illinois law. Therefore, the Court will apply the substantive law of Illinois.

---

[4]A provision of the Illinois Insurance Code, 215 ILCS 5/155, permits a court to award an additional amount plus attorneys' fees and costs for an insurer's "vexatious and unreasonable" action or delay. "[S]ection 155 is procedural rather than substantive . . . ; it provides a remedy in a specified type of 'action' (case); it does not create a cause of action; it presupposes rather than authorizes a suit." *Hennessy Indus. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 770 F.3d 676, 679 (7th Cir. 2014). "Section 155 'simply provides an extracontractual remedy to an action on a policy.'" *Id.* at 679-80 (quoting *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 902 (Ill. 1996)).

*See Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000) (a court will not perform an independent choice-of-law analysis where the parties agree on the governing law and the choice bears a "reasonable relation" to their dispute).

"Under Illinois law, 'the construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment.'" *Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995) (brackets omitted) (quoting *Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (citation and internal quotation marks omitted). On cross-motions for summary judgment, the Court construes all inferences in favor of the party against whom the motion under consideration is made. *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 695 (7th Cir. 2017).

Under Illinois law, an insurer has an obligation to defend its insured in an underlying lawsuit if the complaint in the underlying lawsuit alleges facts potentially within the coverage of the insurance policy, even if the allegations are groundless, false or fraudulent. *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 819 (7th Cir. 2008). "[A]n insurer may justifiably refuse to defend only where it is apparent from such a comparison that the allegations fail to state *any* claim within, or potentially within, the scope of policy coverage." *Int'l Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.*, 522 N.E.2d 758, 762 (Ill. App. Ct. 1988). "'The insurer's duty to defend its insured arises from the undertaking to defend as stated in the contract of

insurance.'" *James River Ins. Co. v. Keyes2Safety, Inc.*, No. 11 C 901, 2012 WL 3023334, at *2 (N.D. Ill. July 24, 2012) (quoting *Zurich Ins. Co. v. Raymark Indus.*, 514 N.E.2d 150, 161 (Ill. 1987)). Thus, "[t]he extent of an insurer's duty to defend is determined by the language in the contract/policy." *Lifschultz Fast Freight, Inc. v. Transcon. Freight Sys., Inc.*, No. 91 C 688, 1993 WL 787511, at *4 (N.D.Ill. Aug. 24, 1993). When the terms of the policy are clear, the court must construe them according to their plain and ordinary meaning, but if any policy language is ambiguous, it must be interpreted against the insurer. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). Generally, the insured bears the burden of proving her claim falls within the policy's grant of coverage, and the insurer bears the burden of proving that a limitation or exclusion applies. *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009). If the insurer relies on an exclusionary provision, it must be "clear and free from doubt that the policy's exclusion prevents coverage." *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992). As long as the exclusions are not prohibited by statute or public policy, an insurer can include any number of them to limit its liability and obligations to the insured. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 462 (7th Cir. 1997).

### 2. Zurich

The Zurich Policy identifies Zurich as the "Company" and the Law Offices of Bari Wood as the "Named Insured." The Zurich Policy includes the "Named Insured" in its definition of the "Insured," along with certain affiliated lawyers and employees. (Zurich Policy at 8.) There is no dispute that Bari Wood is an "Insured" under the Zurich Policy. The "Insuring Agreement" section of the Zurich Policy provides as follows:

### A. COVERAGE

The **Company**[5] will pay on behalf of an **Insured**, subject to the limit of liability, all amounts in excess of the deductible shown in the Declarations that an **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim**[6] that is both made and reported to the **Company** during the **Policy Period** or any extended reporting period based on an act or omission in the **Insured's** rendering or failing to render **Legal Services** for others.  It is a condition precedent to coverage under this policy that the act or omission occurred:

1.      during the **Policy Period**; or

2.      prior to the **Policy Period**, provided that all of the following four conditions are met:

    (a)      the **Insured** did not notify any prior insurer of such act or omission or **Related Act or Omission**;[7] and

    (b)      prior to the inception date of the first policy issued by the **Company** if continuously renewed, no **Insured** had any basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured**; and

    (c)      prior to the date any **Insured** first became a member or employee of the **Named Insured**, such **Insured** had no basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured**; and

---

[5] Terms that the Zurich Policy uses in boldface are defined therein.

[6] "Claim" is defined as "a demand for money or **Legal Services**."  (Zurich Policy at 7.)

[7] "Related Act or Omission" is defined as "an act or omission that forms the basis for two or more claims, where a series of continuous, repeated, interrelated or causally connected acts or omissions give rise to one or more claims, whether committed by one or more **Insured(s)**." (Zurich Policy at 9.)

(d)     there is no policy that provides insurance to the **Insured** for such liability or **Claim**.

## B.     DEFENSE AND INVESTIGATION

The **Company** shall have the right and duty to defend any **Claim** based on an act or omission in the **Insured's** rendering or failing to render **Legal Services** for others, seeking **Damages** that are covered by this policy . . . even if any of the allegations of the **Claim** are groundless, false or fraudulent. . . .

(Zurich Policy at 1.)  Zurich contends that it owes Wood no duty to defend, for several reasons: 1) there was no "potential claim" against Wood that existed during the Zurich Policy Period; 2) Wood did not give sufficient notice of a "potential claim"; 3) Exclusion D of the policy precludes coverage; and 4) the Full Firm Prior Acts Endorsement precludes coverage.

### a.     Estoppel

As a threshold matter, the Court will address Wood's estoppel argument.[8]  Wood argues that Zurich is estopped from asserting any coverage defenses because Zurich did not provide her a defense to the Adversary Proceeding and did not seek a declaratory judgment until it filed its Crossclaim on December 22, 2015, seven months after the Adversary Complaint was filed. Zurich contends that Wood forfeited these arguments by failing to plead estoppel and waiver as affirmative defenses.  In reply, Wood contends that there is no prejudice to Zurich from her assertion of these arguments, and she requests leave to assert the defenses "[t]o the extent that [her] Counterclaim does not adequately raise the issues."  (Dkt. No. 124, Wood's Reply at 7-8.)

---

[8]Wesco adopts Wood's estoppel and waiver arguments.  (Dkt. No. 102, Wesco's Mem. Supp. Mot. & Resp. at 13-14.)

Federal Rule of Civil Procedure 8(c) requires a defendant to plead estoppel and waiver and other affirmative defenses in her answer to a complaint. But "the rule that forfeits an affirmative defense not pleaded in the answer (or by an earlier motion) is . . . not to be applied rigidly." *Matthews v. Wis. Energy Corp.,* 642 F.3d 565, 570 (7th Cir. 2011) (citation and internal quotation marks omitted). Generally, the failure to plead an affirmative defense works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it. *Id.* Although Zurich asserts that it "would be prejudiced by" Wood's delay "in that it was deprived of the opportunity to conduct discovery on Wood's purported defenses in order to fully combat them" (Dkt. No. 113, Zurich's Combined Resp./Reply at 8), Zurich does not attempt to explain, and it is unclear to the Court, what additional discovery it would have conducted if Wood's answer had included estoppel and waiver defenses. The facts that underlie Wood's arguments have been known to Zurich throughout this litigation. Because Zurich has shown no harm resulting from Wood's delay in asserting the affirmative defenses of estoppel and waiver, the Court finds that Wood has not forfeited the defenses by failing to plead them in her answer to the crossclaim, and grants Wood's request for leave to assert them.[9] *See Sunny Handicraft (H.K.) Ltd. v. Envision This!, LLC*, No. 14 C 1512, 2017 WL 1105400, at *9 (N.D. Ill. Mar. 24, 2017) (concluding that defendant had not waived a privilege defense by failing to plead it in its answer, where plaintiffs were unable to show prejudice from the delay).

Nevertheless, Wood fails to persuade the Court that her estoppel argument has merit. "Generally, where a complaint against an insured alleges facts within or potentially within the coverage of the insurance policy, and when the insurer takes the position that the policy does not

---

[9]Wood's waiver argument is briefly discussed below at note 12.

cover the complaint, the insurer must: (1) defend the suit under a reservation of rights; or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these actions, it will be estopped from later raising policy defenses to coverage." *Standard Mut. Ins. Co. v. Lay*, 989 N.E.2d 591, 596 (Ill. 2013). "To avoid estoppel, the insurer must take one of these actions 'within a reasonable time of a demand by the insured.'" *Nautilus Ins. Co. v. Bd. of Dirs. of Regal Lofts Condo. Ass'n*, 764 F.3d 726, 733 (7th Cir. 2014) (quoting *Korte Constr. Co. v. Am. States Ins.*, 750 N.E.2d 764, 770 (Ill. App. Ct. 2001)).

In support of her argument, Wood cites *Central Mutual Insurance Co. v. Kammerling*, 571 N.E.2d 806 (Ill. App. Ct. 1991), in which the court held that the insurer was estopped from raising policy defenses when it had not sought declaratory judgment until over six months after acknowledging its duty to defend and ten months after it received notice of potential liability. The extent of Wood's argument is that "Zurich waited approximately seven months after it had acknowledged a duty to defend . . . and approximately 22 months after receiving the notice of a potential claim" before seeking declaratory judgment. (Dkt. No. 104, Wood's Resp. & Cross-Mot. at 20.)

Wood misses the mark. The time period between notice of an underlying action and the filing of a declaratory-judgment action—the "raw chronological delay"—is not determinative of whether estoppel applies; rather, the most important factor is whether the insurer waited until trial or settlement was imminent. *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 965 (Ill. App. Ct. 2001) (concluding that insurer's declaratory judgment action, which was filed six months after insurer received notice of the underlying suit and fifteen months before that suit was settled, was timely). *Kammerling* is distinguishable because there, the insurer waited until it was notified of the possible settlement of the underlying action to

assert its obligation to seek declaratory relief as an alternative to its duty to defend. 571 N.E.2d at 810. Here, the Adversary Proceeding was in its early stages at the time Zurich sought declaratory judgment. The Court therefore declines to estop Zurich from asserting its policy defenses.

### b. Potential Claim

In Section V, "**CONDITIONS**," subsection B.3, "**NOTICE** OF A POTENTIAL **CLAIM**," the Zurich Policy provides as follows:

> The **Insured**, as a condition precedent to this policy, shall immediately provide **Notice** to the **Company** if any **Insured** has any basis to believe that any **Insured** has breached a professional duty or to foresee that any such act or omission might reasonably be expected to be the basis of a **Claim**. If during the **Policy Period** the **Insured** shall become aware of any act or omission that may reasonably be expected to be the basis of a **Claim** against an **Insured** and gives **Notice** to the **Company** of such act or omission and the reasons for anticipating a **Claim**, then any such **Claim** that is subsequently made against the **Insured** and reported to the **Company** shall be deemed to have been made and reported at the time such **Notice** was given.

(Zurich Policy at 4.)

Zurich maintains that there was no "potential claim" against Wood of which she could provide notice during the Zurich Policy Period because it is "indisputable" that during that time, Wood was unaware of anyone alleging that she had breached a professional duty. (Dkt. No. 94, Zurich's Mem. Supp. Mot. at 8.) Zurich fails to address the remainder of the policy's description of the relevant inquiry—whether Wood became aware of an act or omission that may reasonably have been expected to be the basis of a claim against her. According to Zurich, the Moving Creditors' Motion for Leave "indisputably does not allege any act or omission against Wood." (Zurich's Combined Resp./Reply at 3.) Zurich is incorrect. The Motion for Leave seeks information pertaining to the "invoicing and correspondence" Wood handled for Glick in

relation to Play Makers Group, LLC. (Mot. for Leave at 6.) Wood's "invoicing and correspondence" are the acts of which she became aware that were reasonably expected to be the basis of a claim against her. Zurich places great emphasis on fact that the Motion for Leave does not explicitly allege that Wood committed any "wrongdoing." (Zurich's Combined Resp./Reply at 4.) All that the Zurich Policy requires for a potential claim, though, is an act or omission that may reasonably be expected to be the basis of a claim; it does not require an explicit allegation of wrongdoing.

### c. Notice

Zurich also contends that Wood insufficiently reported a potential claim by failing to satisfy the notice condition of the Zurich Policy, which states as follows:

> **NOTICE** means the **Insured's** providing the following information to the **Company**, either in writing or as otherwise authorized by the **Company**:
>
> 1. the description of the alleged act or omission; and
> 2. the identities of the claimants or potential claimants; and
> 3. the identities of the responsible **Insured(s)**; and
> 4. the date and circumstances by which the **Insured(s)** first became aware of the act or omission.

(Zurich Policy at 8.)

Notice provisions in insurance policies "impose valid prerequisites to insurance coverage." *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 343 (Ill. 2006). Therefore, "[b]reaching a policy's notice clause by failing to give reasonable notice will defeat the right of the insured party to recover under the policy." *Id*. Where, as here, the material facts are undisputed, the reasonableness of notice to an insurer by its insured is a question of law. *See Kerr v. Ill. Cent. R.R.*, 670 N.E.2d 759, 766 (Ill. App. Ct. 1996). "The Illinois Supreme Court has looked to several factors in assessing whether an insured's notice is reasonable, including:

(1) the specific language of the policy's notice provision; (2) the insured's sophistication in insurance matters; (3) the insured's awareness of an event which may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." *Essex Ins. Co. v. Vill. of Oak Lawn*, 189 F. Supp. 3d 779, 790 (N.D. Ill. 2016) (citing cases). "A proper analysis of the sufficiency of notice is whether the notice given objectively complied with the potential claim notice provision of a policy." *Cont'l Cas. Co. v. Coregis Ins. Co.*, 738 N.E.2d 509, 518 (Ill. App. Ct. 2000).

The record belies Zurich's assertion that "no information was provided" to it, (Zurich's Mem. Supp. Mot. at 3), during the Zurich Policy Period that described Wood's alleged acts or omissions, identified the potential claimants, or identified the date and circumstances by which Wood first became aware of the alleged acts or omissions. As discussed above, the Motion for Leave, which alerted Wood as to the potential claim against her, was submitted to Zurich by Wood's insurance broker on March 7, 2014, two days after it was filed, and the motion described certain "invoicing and correspondence" that Wood handled for a Glick entity. Three days later, Wood spoke with Peraggine, Zurich's claim handler, and provided additional information to him. Peraggine's understanding at that time was that creditors of Glick were seeking documents and information from Wood. (Peraggine Dep. at 47.) In Zurich's "claim notes" for Wood's claim, Peraggine made a note that day titled "INS[URE]D Law Offices of Bari Wood," in which he stated: "Receipt and review of new matter assigned to me on March 10 2014. Matter is a potential claim." (Dkt. No. 105-6, Ex. G, at 2-3.)[10] He also noted that he had spoken to Wood

---

[10]Peraggine testified at his deposition that he wrote that the matter was a "potential claim" not as a coverage determination, but only as "an internal reference for the system." (Peraggine Dep. at 31-36.)

"in detail." (*Id.* at 3.)  In an additional entry on that date, Peraggine further described the topics of Wood and Peraggine's conversation, and stated in part:

> [Wood] performs corporate work for [Glick's companies], including reviewing their agreements, financing agreements, and transaction documents. . . . The insured did not speak with the attorneys who propounded the subpoena, but did speak with bankruptcy counsel for Glick.  He believes they are looking for documents related to the various transactions that Playmakers was involved in. He thinks they are looking for evidence of sales and who they are doing business with.

(*Id.* at 2.)

In the Notice of Circumstance form that Wood submitted to Zurich on March 27, 2014, Wood indicated that March 7, 2014 was the date she first had reason to believe a claim might be made.  And, although she responded to the question that sought the identity of the potential claimants by stating "[n]one at this time," she also referred therein to Question 8, in response to which she referred to the Motion for Leave, a copy of which Zurich had.  Although Wood herself did not identify the potential claimants, it was evident from the motion that they would likely be the creditors or the bankruptcy estate.  In any event, Zurich did not request further information from Wood, even after it did not receive a response to the evidently-misdirected Grob Letter of March 10.  Wood forwarded Zurich a copy of the subpoena in June 2014.  Later that month, Grob stated in a claim-handling note: "Ins[ure]d was served with a subpoena for documents.  Potential claim relates to ins[ure]d as counsel for certain corporate entities allegedly shielding certain assets."  (Dkt. No. 105-6, Ex. H, at 4.)  Under a reservation of rights, Zurich then provided Wood "pre-suit counsel" to assist her with responding to the subpoenas.  In its July 2014 Reservation of Rights Letter to Wood, Zurich identified a number of potential coverage defenses, but it did not indicate that it was expecting any further notice information from Wood, nor did it identify any notice-based defense.  There is no indication in Zurich's

claim-handling notes that Zurich believed notice was incomplete.

Wood promptly notified Zurich of the Motion for Leave within two days of its filing. Within three weeks, she provided Zurich, in writing, with her identity as the responsible Insured and the date and circumstances by which she first became aware of the alleged act or omission. By providing Zurich with a copy of the Motion for Leave and referring to it, she also provided Zurich with a description of the alleged act or omission and the identities of the potential claimants. Wood acted diligently. Zurich fails to discuss the specific language of the policy's notice provision, which also allows for the Insured to provide notice of the specified information "as otherwise authorized by" Zurich. It is undisputed that Wood answered all of Peraggine's questions in their initial conversation about the potential claim and that Wood reported all of the information she had to Zurich. Zurich did not follow up thereafter to seek any additional information from Wood, nor did it identify a potential notice-based defense in the Reservation of Rights Letter. Furthermore, Zurich does not identify any prejudice that resulted from what it deems inadequate notice; in fact, it does not even explain what it did not know or how the information Wood provided was incomplete. Application of the relevant factors considered by the Illinois Supreme Court in determining reasonableness of an insured's notice—the specific language of the Zurich Policy's notice provision, Wood's awareness of the allegations in the Motion for Leave and her diligence in notifying Zurich of the matter, and the lack of prejudice to Zurich[11]—therefore compels the conclusion that Wood gave Zurich reasonable notice of a

---

[11]The fifth factor is the insured's sophistication in insurance matters. Zurich argues that Wood is an attorney and "therefore, sophisticated in commerce and insurance matters," (Zurich's Combined Resp. at 5), but that is a non sequitur, and Zurich does not cite any evidence. In any event, on this record this factor has little to no relevance, so it favors neither party.

potential claim.[12]

Zurich cites no authority that supports its argument that the information provided by Wood was insufficient to comply with the notice condition under Illinois law. Zurich cites, as an "illustrative" decision, *Illinois State Bar Association Mutual Insurance Co. v. Beeler Law, P.C.*, No. 1-14-0790, 2015 WL 1407310 (Ill. App. Ct. Mar. 25, 2015), in which the court affirmed the circuit court's ruling that the insured under a "claims made and reported" professional liability insurance policy had failed to give proper notice within the policy period where the only information it had provided prior to the policy's expiration (and one day prior, at that) was the following statement: "Potential claims: 1) RM Lucas, Co.; 2) R Magnum; 3) Abdul Razzaq. Details to follow." *Id.* at *1. Zurich's reliance on *Beeler* is unavailing, for two reasons. First, *Beeler* is an unpublished decision of the Illinois Appellate Court, so it has no precedential value. *See* Ill. S. Ct. R. 23(e)(1) (unpublished orders are nonprecedential and generally may not be cited by any party). Second, the decision is factually distinguishable because the insured provided the insurer virtually no information about the potential claim during the policy period. Zurich also cites and discusses *Darwin National Assurance Co. v. Centre for Management and Technology, Inc.*, Civ. Action No. MJG-06-3189, 2008 U.S. Dist. LEXIS 108184 (D. Md. Mar. 14, 2008), which is inapposite because it applies Maryland law.

### d.     Exclusion D

Even if Wood adequately reported a potential claim, says Zurich, Exclusion D of the Zurich Policy precludes coverage. Exclusion D provides in relevant part as follows:

This policy shall not apply to any Claim based upon or arising out of, in whole or

---

[12]Given this ruling, the Court need not discuss Wood's argument that Zurich waived its right to rely on the notice provision.

in part:

. . .

    D.  the **Insured's** capacity or status as:

        1.  an officer, director, partner, trustee, shareholder, manager or employee of a business enterprise . . .

(Zurich Policy at 2.)

According to Zurich, Exclusion D applies because the Adversary Proceeding arises at least in part out of Wood's status as an employee of a Glick entity or entities. It is undisputed that Wood served as in-house general counsel and Chief Operating Officer ("COO") of Glick Group, LLC from fall 2008 to December 31, 2012, and that she did not begin practicing law as a sole proprietor until May 6, 2013. The Trustee alleges in the Adversary Proceeding that Wood, "as Chief Operating Officer and General Counsel of Glick Group . . . assisted with the negotiation and review" of certain legal documents executed by Glick entities in 2012; knew of "Glick's mounting debts" through her roles as COO and in-house counsel; negotiated and drafted in 2011 and 2012 certain agreements and licenses for Glick's companies and created certain Glick entities; "played a vital role in the formation of [a Glick trust and certain trust entities], the transfer of [a] license and the ongoing scheme to defraud creditors," as COO and counsel; "aided and abetted [Glick's] fraudulent transfer and concealment scheme"; and received certain payments without authority from the Trustee. (Am. Adversary Compl. at 26, 76-83.)

In response, Wood argues that Zurich's position ignores the plain language of Exclusion D and the policy's definition of "Insured."[13] In Wood's view, because the policy includes

---

[13]Wood also asserts that Zurich overlooks "the rationale behind business enterprise exclusions in lawyers' professional liability insurance policies," (Wood's Resp. & Cross-Mot. at 11), but does not explain why the Court should consider this argument when neither Zurich nor Wood contends that Exclusion D is ambiguous.

among its definition of an "Insured" "any lawyer or professional corporation listed in the application on the day the **Policy Period** incepts until such time as the lawyer or professional corporation ceases to be a member of the **Named Insured**," the definition (and Exclusion D) contains a "temporal component." (Wood's Resp. & Cross-Mot. at 11-12.) Therefore, says Wood, because she left the Glick Group's employ more than four months prior to becoming an "Insured," no "Insured," as the policy defines that term, had any status as an employee of a business enterprise during the term of the Zurich policy. (*Id.*)

The Court is unpersuaded by Wood's tortured reading of Exclusion D, which is unsupported by authority and at odds with the provision's plain language.[14] She effectively grafts a temporal limitation onto the exclusion to require that the claim at issue have arisen out of the Insured's status as an officer or employee *during the Policy Period*. But that limitation simply does not exist. The majority of the transactions upon which the Trustee bases his claims against Wood are alleged to have occurred while Wood was acting as COO and general counsel of Glick Group, prior to the time she began practicing law as a sole proprietor. The Trustee's claims thus arise at least in part if not wholly from Wood's status as an officer and employee of a business enterprise, and Zurich has therefore clearly demonstrated that Exclusion D precludes coverage. Accordingly, summary judgment in favor of Zurich and against Wood is appropriate

---

[14]Moreover, it would seem that Wood's argument, taken to its logical extreme, would mean that she would have no standing to sue under the Zurich Policy after it expired in May 2014 because she was no longer an "Insured."

on Zurich's crossclaim as to the duty to defend, as well as on Count I of Wood's counterclaim[15] and Count IV of Wesco's amended complaint.

Having held that Exclusion D relieves Zurich of the duty to defend Wood in the Adversary Proceeding, the Court need not consider whether the Zurich Policy's "Full Firm Prior Acts Endorsement" exclusion does the same.

### e.    Duty to Indemnify

"[I]f the Court concludes that there is no duty to defend, it can immediately address the question of an insurer's duty to indemnify even if the underlying liability of the insured remains unresolved."[16]  *The Cincinnati Ins. Co. v. Berkshire Refrigerated Warehousing, LLC*, 149 F. Supp. 3d 867, 874 (N.D. Ill. 2015).  "An insurer's duty to defend is broader than its duty to indemnify. If an insurer has no duty to defend, it has no duty to indemnify."  *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) (applying Illinois law).  As a result, Zurich has no duty to indemnify Wood, so summary judgment in favor of Zurich and against Wood is appropriate on Zurich's crossclaim as to the duty to indemnify, as well as on Count II of Wood's counterclaim.

### 3.    Wesco

Wood, P.C. does not assert a claim against Wesco, nor does Wood assert any claim based

---

[15]As noted above, Wood also asserts in Count I of her counterclaim that she is entitled to relief under section 155 of the Illinois Insurance Code for Zurich's "vexatious and unreasonable" refusal to defend her.  Because the Court has concluded that Zurich did not have a duty to defend Wood, she is not entitled to relief under section 155.  *See First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002).

[16]In their recent motion to supplement the record, the parties state that the question of indemnification by Zurich or Wesco "may become moot, depending on any potential appellate review of" the bankruptcy court's with-prejudice dismissal of the claims against Wood.  (Joint Mot. Supplement at 2 n.1.)

on the First Wesco Policy. Wood labels her claims against Wesco as being brought "in the alternative." (Wood's Countercl. at 21, 23.) She states therein that "[i]n the event the Court finds that none of Wood's multiple notices to Zurich of the Motion for Leave constitute notice of a potential Claim under the Zurich Policy, then the Adversary Complaint was a claim first made against Wood and reported to Wesco during the period of the Second Wesco Policy, and Wood neither knew of nor could reasonably have foreseen prior to the inception date of the First Wesco Policy that any act or omission might be expected to be the basis of a claim." (*Id.* ¶¶ 100, 111.) The Court has held that Zurich has no duties to defend or indemnify Wood, but its holding is based on Exclusion D, not the notice issue. Because the Court held that Wood sufficiently reported a potential claim to Zurich during the Zurich Policy Period, Wood's claims against Wesco are rendered moot and therefore dismissed.

In its amended complaint, Wesco seeks declaratory judgments that it has no duty to defend or indemnify Wood, P.C. or Wood under either Wesco policy. The First Wesco Policy identifies the Law Offices of Bari Wood as the "Named Insured," and the Second Wesco Policy identifies the Law Offices of Bari D. Wood, P.C. as the "Named Insured." The policies include the "Named Insured" in the definition of the "Insured," along with certain affiliated lawyers and employees. (Wesco Policies at 3.) There is no dispute that Bari Wood is an "Insured" under the policies. The "Insuring Agreement" section of the Wesco Policies provides as follows:

A.    COVERAGE

The **Company**[17] will pay on behalf of the **Insured** sums in excess of the deductible that the **Insured** shall become legally obligated to pay as

---

[17]Terms that the Second Wesco Policy uses in boldface are defined therein.

**damages** because of a **claim**[18] that is first made against the **Insured** and reported to the **Company** during the **policy period** or any Extended Reporting Period arising out of an act or omission in the performance of **legal services** by the **Insured** . . . , provided that:

1.  prior to the inception date of the **policy period**, the **Insured** did not give notice under any other insurance policy of such **claim** or **related claim**[19] or such act or omission or **related act or omission**;[20] and

2.  prior to the inception date of the first policy, or if this policy has been continuously renewed, prior to the inception date of the first policy issued by the **Company**, no **Insured** knew of or could reasonably have foreseen that any such act or omission, or **related act or omission**, might be expected to be the basis of a **claim**.

(Wesco Policies at 1.)

It is undisputed that no claim was made against Wood, P.C. and that Wood, P.C. did not report any claim to Wesco during either Wesco Policy Period. It is also undisputed that Wood did not report any claim to Wesco during the First Wesco Policy Period. Summary judgment in favor of Wesco and against Wood, P.C. and Wood on Counts I and II of Wesco's amended complaint is therefore appropriate.

Although Wood reported a claim to Wesco during the Second Wesco Policy Period, before that period she had previously given notice to Zurich of the acts alleged in the Motion for

---

[18]"Claim" is defined as "a written or verbal demand received by the **Insured** for money or services arising out of an act or omission . . . in rendering or failing to render **legal services**." (Wesco Policies at 2.)

[19]"Related claim" is defined as "all **claims** arising out of a single act or omission or arising out of **related acts or omissions** in the rendering of **legal services**." (Wesco Policies at 4.)

[20]"Related act or omission" is defined as "all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." (Wesco Policies at 4.)

Leave, which at least meet the definition of "related act(s) or omission(s)" under the Wesco Policies. Thus, Wood cannot show that she satisfies the coverage condition set forth in subsection A.1. of the Wesco Policies' Insuring Agreement. Nor can she show that she satisfies the coverage condition set forth in subsection A.2.[21] Prior to the May 2014 inception date of the First Wesco Policy, Wood knew that the acts included in the Motion for Leave might be expected to be the basis of a claim. Indeed, in her March 2014 Application for insurance, Wood responded in the affirmative to the question that asked whether she was aware of any act that could result in a claim against her, and she referred to the Motion for Leave.

Coverage is also precluded under Exclusions D and F of the Wesco Policies, which provide as follows:

> This Policy does not apply:
> . . .
> D.    to any **claim** based on or arising out of an **Insured**'s capacity as:
>
>    1.    a former, existing or prospective officer, director, shareholder, partner or manager of a business enterprise . . . unless such enterprise . . . is named in the Declarations . . . .[22]
> . . .
> F.    to any **claim** based on or arising out of **legal services** performed for any existing or prospective partnership, organization, corporation, company or other business enterprise, including any **claim** made by or on behalf of such [entity], if at the time of the act or omission giving rise to such **claim**:
> . . .
>    2.    any **Insured**:
>
>       a.    was a partner or employee of such enterprise . . . .

(Wesco Policies at 6.) As discussed above with respect to the Zurich Policy's similar Exclusion

---

[21]Wood does not argue otherwise as to A.1 or A.2.

[22]The Glick Group is not named in the Declarations.

D, the Trustee's claims arise out of Wood's capacity as an officer of Glick Group and the legal services she performed for the Glick Group as an employee, so Exclusions D and F of the Wesco Policies also preclude coverage.[23]  Summary judgment in favor of Wesco and against Wood on Count III of Wesco's amended complaint is therefore appropriate.  In view of these rulings, the Court need not address Wesco's arguments regarding the Wesco Policies' Retroactive Date Limitation Endorsement or definition of "damages."

As a final matter with regard to Wesco's motion, the Court must address Count V of the amended complaint, in which Wesco alleges that its policies "are excess vis-à-vis the Zurich Policy," "[t]o the extent that the First Wesco Policy and/or the Second Wesco Policy apply to any claim."  (Wesco's Am. Compl. ¶ 239.)  Because the Court has concluded that there is no coverage under any of the policies, Count V is dismissed as moot.

**B.     Zurich's Motion to Strike Report and Bar Testimony of Wesco's Expert Witness**

Prior to the filing of the parties' motions for summary judgment, Zurich moved to strike the report of Wesco's expert witness, Charles D. Henderson, and bar his testimony.  None of the parties' motions for summary judgment, however, relied on the admission or exclusion of this evidence.  In its response to Zurich's motion to strike, Wesco states that it intends to use Henderson's testimony "in the event that the court determines certain factual issues must be resolved by a trier of fact."  (Dkt. No. 81, Wesco's Opp'n Zurich's Mot. Strike at 1.)  The Court has not made such a determination, and today's ruling disposes of the entire case.  Accordingly,

---

[23]In response to Wesco's argument regarding Exclusions D and F, Wood simply argues that it "fails for the same reasons that Zurich's motion fails" with respect to Zurich's similar provision, and she "incorporates her response to Zurich's argument."  (Dkt. No. 118, Wood's Resp. Wesco's Mot. at 8.)  Wood does not present any argument on the particular language of Wesco's Exclusions D or F.

Zurich's motion to strike is denied as moot.

## CONCLUSION

The motion of American Zurich Insurance Company for summary judgment [92] is granted. The motion of Wesco Insurance Company for summary judgment [100] is granted in part and denied in part. The motion of Bari Wood and the Law Offices of Bari Wood, P.C. for summary judgment [104] is denied. The motion of American Zurich Insurance Company to strike the expert report of Charles D. Henderson and bar his testimony [71] is denied as moot.

Summary judgment is entered: (1) in favor of American Zurich Insurance Company and against Bari Wood on Zurich's crossclaim and on Counts I and II of Wood's counterclaim; (2) in favor of Zurich and against Wesco Insurance Company on Count IV of Wesco's amended complaint; (3) in favor of Wesco and against Wood, P.C. and John E. Gierum, as Trustee for the bankruptcy estate of Jonathan F. Glick, on Count I of Wesco's amended complaint; and (4) in favor of Wesco and against Wood and John E. Gierum, as Trustee for the bankruptcy estate of Jonathan F. Glick, on Counts II and III of Wesco's amended complaint. Counts III and IV of Wood's counterclaim and Count V of Wesco's amended complaint are dismissed as moot. Civil case terminated.

**DATE**:  September 27, 2017

**Ronald A. Guzmán**
**United States District Judge**